**Edward PIPES, a Minor, by Next Friend, Respondent,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant.**

No. 47253.

Supreme Court of Missouri,

En Banc.

Sept. 12, 1960.

Harold L. Harvey, St. Louis, Hilary A. Bush, Fred A. Murdock, Johnson, Lucas, Bush & Gibson, Kansas City, for appellant.

E. J. Murphy, Butler, for respondent.

LEEDY, Judge.

Action for damages for personal injuries sustained by Edward Pipes, a minor (who sues through his father as next friend), in a collision between the automobile he was driving and a 90-car freight train of defendant at a grade crossing. Verdict and judgment for plaintiff for $70,000. Appealing, the railroad assigns error (1) in the refusal of its motion for a directed verdict at the close of all the evidence, which motion was based on the ground that plaintiff was contributorily negligent as a matter of law, and (2) in giving two instructions.

■ The petition did not charge negligence under the humanitarian rule, but, on the other hand, pleaded, and the cause was submitted (disjunctively) upon these charges of primary negligence: Failure to keep a proper lookout, excessive speed and failure to signal the train's approach, so that if plaintiff was guilty of contributory negligence which directly contributed to produce his injury, his verdict and judgment cannot stand.

The appeal was first heard and submitted in Division No. 1 where an opinion was drafted, which, if adopted, would have affirmed the judgment, but because of diverse views between the members in division, the case was transferred to banc without opinion. It has been rebriefed and argued anew in the light of the draft opinion, much of which opinion, insofar as it pertains to the decisive issue (whether plaintiff was contributorily negligent as a matter of law), we adopt with minor changes, as set forth below (without identifying quotation marks), deleting, of course, those matters and things which are deemed to require different treatment, and substituting therefor our own views and conclusions.

The casualty occurred in the early morning hours of December 14, 1957, at a grade crossing in Butler where Mill Street and defendant's right-of-way and tracks intersect at right angles. Plaintiff was then 18 years of age, and had graduated from the Butler High School in the preceding May. He lived in that community, and, for aught that appears, was in normal physical condition. About 1:40 a. m., on the day in question, he drove his automobile (which from photographs appears to have been a Ford coach or two-door sedan) eastwardly on Mill Street, with his 15-year-old "date" sitting beside him "about in the middle of the front seat." At the point where Mill Street crosses the railroad tracks, the freight train ran into the right side of plaintiff's automobile near the front thereof, inflicting serious and disabling injuries upon plaintiff.

■ The burden to prove that plaintiff was contributorily negligent was on the defendant. Zumault v. Wabash R. Co., Mo., 302 S.W.2d 861, 862 [1]. The jury could believe or disbelieve defendant's evidence on that issue, even though uncontradicted, and thus we ignore its evidence to the effect that the headlight was burning, that the whistle and bell were being sounded continuously as the train approached and occupied the crossing, and other evidence offered by defendant tending to prove plaintiff contributorily negligent. It follows, of course, that proof of plaintiff's negligence must appear from evidence adduced by him or from evidence which he concedes to be true or from binding documentary evidence, or by proof of facts and circumstances by defendant which leave room for no other reasonable inference, or from a combination of them, in order that a court correctly may declare plaintiff contributorily negligent as a matter of law. State ex rel. Thompson v. Shain, 349 Mo. 1075, 163 S.W.2d 967, 972, 973, 974; Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835, 847; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972,

975 [1–4]; Slates v. Joplin Butane Gas Co., Mo., 315 S.W.2d 808, 812 [1, 2]. We shall examine the evidence in the light of the rule last stated above.

Frequently-traveled, gravel-surfaced, two-lane, east-west Mill Street in Butler is a continuation of a country road leading into the city from the west. Defendant's four north-south tracks intersect Mill Street at right angles. From west to east there was a house track, a passing track, a main-line track, and a storage track. The crossing was generally level and reasonably smooth. It was protected by the usual wood cross-arm signs. There was no flagman; there were no gates or electric flasher signals, although the other two grade crossings in Butler were protected by electric flasher signals. There was a street light high on a telephone pole at the northeast corner which caused the intersection to be well lighted. A light and power plant was on the intersection's northeast corner, a brick building on the southeast, an open field on the northwest, and a small D–X Sunray Oil Company warehouse on the southwest. To the rear and south of that warehouse were other structures which paralleled the railroad's right-of-way for an appreciable distance. The main-line track extended due south from Mill Street.

Inasmuch as the train was traveling from south to north and the automobile from west to east, it is the southwest corner with which we are particularly concerned. Plaintiff's pictorial evidence made it plain that the D–X warehouse (and the structures south of it), the east side of which was very close to the west railroad right-of-way line and the front or north of which was relatively close to the south edge of Mill Street, obscured the view southwardly along the railroad tracks of an automobile driver proceeding east on Mill Street and, of course, likewise obscured the view west on Mill Street of one traveling north on the main-line track. Plaintiff's brief indicates that he has accepted as true defendant's measurement showing the distance from the

west rail of the westernmost track to the center line of the main-line track on which the collision occurred as 32.7 feet, and it is apparent from plaintiff's picture evidence that the distance from the east side of the warehouse building to the west rail of the westernmost track is probably about 18 feet, the figure testified to by defendant's civil engineer.

Unfortunately, plaintiff received a brain injury. The trial attorneys stipulated, in effect, that he did not have sufficient mental capacity to testify. He had been in prior good health. His front-seat passenger (his teen-age "date") remembered nothing of the collision, apparently suffering a "black-out" from collision time until she later awoke in a hospital. The evidence was that plaintiff and his "date" and another teen-age couple in plaintiff's car, after attending a party, ran out of gasoline while driving toward Butler on the road which became Mill Street at the city limits. They walked to the home of one of the passengers, in town, obtained another automobile and some gas and returned to plaintiff's car. The two couples then sat for a time in their respective cars which were parked on the road about a mile from the city limits, after which plaintiff and his friend started back to town, proceeding eastwardly in his car on the extension of Mill Street. They were followed at some distance by the other couple in the other automobile. Plaintiff's companion turned around and looked back toward the other car on two occasions; the first time the other car hadn't yet started back, and she and plaintiff were "kidding each other" and teasing about whether the others were still sitting there parked on the road, but the second time she saw "their lights coming behind us, toward us," plaintiff's car being then "just a little bit past Prospect," a street one block west of the crossing. As to plaintiff's rate of speed at that point the witness stated she had no idea other than that "he wasn't going fast, just kind of—might say regular speed," by which she stated she meant the normal or average speed a person drives down a

country road. Under plaintiff's evidence, there was no whistle, bell or other signal sounded or given to indicate the approach or presence of the train. The 90-car freight train was being pulled by four diesel units. Plaintiff's evidence did not show whether the diesel's headlight was burning as the train approached the crossing. The front toward the left of the lead diesel struck the right side toward the front of plaintiff's automobile. The train stopped 27 car lengths or about 1,100 feet north of the crossing.

Plaintiff's front-seat passenger testified that she never did see the train or receive any warning of its approach; that she knew of the presence and location of the railroad tracks; and that she and plaintiff had driven across those tracks on several prior occasions and on some of those occasions she had seen trains pass there. The weather was chilly and, from the testimony of one of the train crew that the diesel windows were closed, it reasonably could have been inferred that the windows of plaintiff's automobile were closed. Plaintiff adduced no specific evidence as to atmospheric conditions, but from all his evidence the reasonable inference was that visibility was good and no atmospheric condition contributed to cause the casualty.

While of no decisive effect or significance, in explanation it should be stated that the automobile following plaintiff's car turned south a couple of blocks before reaching the tracks when the driver saw that a freight train was crossing Mill Street in order to take advantage of an underpass. The occupants of the following car did not see the collision or realize that there had been one until the next day.

■ It has often been said "that a railroad track itself is a warning of danger, and that a highway traveler must exercise care commensurate with the circumstances—a motorist, the highest degree of care. [§ 304.010 RSMo 1949 and V.A. M.S.] If his view is obstructed, he must do whatever is necessary and possible to safeguard himself—by having his car under control, slowing up, stopping, listening, and continuing to look until he can see, even up to the crossing." Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 248, 172 S. W.2d 835, 848. Further, his duty to look is not performed by looking only from a point at which his view is obscured, but he must look at a place where, if possible, he may see the track, i. e., he must look at a place where it is reasonably effective to do so; and that a motorist approaching a railroad crossing with which he is familiar, who fails to look or to see that which is plainly visible if he performs his duty to look, is contributorily negligent. Rischeck v. Lowden, 347 Mo. 426, 147 S.W.2d 650, 652 [2]; Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885, 892 [7–10]; Hackett v. Wabash R. Co., Mo., 271 S.W.2d 573, 578; Short v. Missouri-Kansas-Texas R. Co., Mo., 312 S.W.2d 50, 53 [1], 54 [2].

■ We shall briefly review the pertinent facts which plaintiff's direct and circumstantial evidence established and the conclusions resulting, in the light of the well-settled legal principles stated above. Plaintiff knew that railroad tracks crossed Mill Street at the place in question. He had the duty to look and listen as he approached those tracks. His view of the tracks to his right (south) as he drove on Mill Street was obstructed until he reached a certain point. After he had passed a point someplace west of the westernmost track, he had an unobstructed view of the main-line track to his right (south). He had the duty to look to his right after he had passed all obstructions and when he had reached the place where he could see south for a distance beyond the place where defendant's approaching train must necessarily have been at that time. He had the further duty to then have his car under such control that he could protect himself from any danger that his listening and looking disclosed or, in the exercise of the highest degree of care, should have dis-

closed. He was charged with seeing that which was plainly visible.

We need not determine whether plaintiff is chargeable, as a matter of law, with having heard the train soon enough to have avoided the collision. There are factors, such as the absence of signals of the proximity and approach of the train, the car windows being up, and the noise of the machinery of the power and light plant on the northeast corner, which would seem to make that question one for the jury. But the question of whether plaintiff, as a matter of law, must have seen the train becomes crucial, and the answer to that question depends on whether the diesel's headlight was burning as it approached the crossing. If, as defendant's fireman and engineer testified, the lead diesel's two-bulb white headlight was burning and its beams were shining down the track ahead, then, in view of the matters heretofore set forth, the conclusion is inescapable that plaintiff must be charged with having seen the approaching train or with a failure to have looked from a place where he had an unobstructed view, and that, in either event, his failure to have avoided driving in front of the train constituted contributory negligence as a matter of law. But plaintiff was not bound by the testimony of the fireman and the engineer that the headlight was burning; the jury could believe or disbelieve their testimony in that respect. Plaintiff's evidence did not show whether the diesel's headlight was burning, i. e., he adduced no evidence on that subject, and so the question is reduced to whether there were circumstances shown in evidence from which the jury could reasonably and fairly have drawn the inference that the headlight on defendant's approaching train was not burning. There are three sets of circumstances relied upon as being sufficient for that purpose, and the draft opinion entertained that view as to two of them. This court, long ago, in a situation involving a passenger train approaching a crossing near a town and running at 25 m. p. h., on a dark night, said that having the head-light of a train lighted and burning was "a common and necessary means adopted by all railroad companies for the protection alike of those rightfully on the train, and on the track, or approaching it, in the nighttime. No engine is constructed without such a light, *and no train is run in the nighttime by any railroad company, under any ordinary circumstances, without having it lighted.* This is a fact known to all reasonable minds by common experience. * * *." (Emphasis supplied.) Becke v. Mo. Pac. Ry. Co., 102 Mo. 544, 552, 13 S. W. 1053, 1055, 9 L.R.A. 157. It is t· that this was said in upholding the t court's declaration that it was negligence if the defendant there failed to have such a light lighted and burning, but, even so, such reasoning has validity and application here as bearing on the probabilities involved in our situation.

The rule is "that the inference drawn must be reasonable, and may not be arrived at by speculation or conjecture. But neither is the inference to be precluded by speculation or conjecture, or by a mere possibility that the contrary may be true. * * * Probabilities, not possibilities, are controlling. It is not required that an inference be justified beyond all doubt." Mauzy v. J. D. Carson Co., Mo.App., 189 S.W.2d 829, 833. "If two or more inferences may be deducted of equal reasonableness, then there is no inference that may be indulged without mere speculation." Pape v. Aetna Casualty & Surety Co., Mo.App., 150 S.W.2d 569, 573.

Plaintiff's first insistence that it may be inferred that the headlight was not burning is, in substance, this: Plaintiff's companion having testified that she had no warning whatever that there was a train approaching the crossing, and she did not ever see it, and notwithstanding her positive and emphatic testimony that she had no personal recollection of the accident and remembered nothing after she passed Prospect, a block west of the tracks, until she awakened the next day in a hospital, the

jury might nevertheless have believed that she would have remembered seeing the train's headlight if it had been burning prior to the instant of the actual collision.

Secondly, it is urged that such an inference may be drawn from the fact that plaintiff drove his car onto the track immediately ahead of the diesel and at right angles to it, thus indicating want of evasive action of any kind on his part, not even a turn or swerve in an attempt to avoid the train, which, if its headlight had been burning, must have been apparent to plaintiff at some point prior to the collision, even if he negligently failed to see it in time to have avoided some sort of collision.

Finally, it is said that the inference sought is deducible from the fireman's testimony, which plaintiff characterizes as "vague as to what he claims to have seen at the time of the accident" in the following respects: (1) That he did not recall the color of the car, and couldn't say whether it was a dark or light color; (2) that he did not see any reflection from the approaching car's headlights, and (3) that he had no judgment as to the speed of the automobile.

To draw such an inference from the first of the bases relied on by plaintiff, as enumerated above, would be contrary to the very testimony upon which it is said to arise, i. e., that of plaintiff's companion. This witness had suffered traumatic amnesia as a result of the collision. She stated affirmatively that she had no personal recollection of the accident itself, and remembered nothing that happened between the time plaintiff's car reached Prospect (a block west of the crossing) and the time when she awakened in the hospital the next day. Her last recollection apparently was that of being at or near Prospect and looking back (and in the opposite direction from the scene of the accident) toward the other car to which reference has been made. Plaintiff points to her having answered a question as to whether the blow she received had not "knocked out a whole lot of this memory that you had," by stating, "Yes, the part about the wreck. But before the wreck I can pretty well remember everything." But this was elicited on cross-examination as to details concerning their trip back into town after running out of gasoline, and a reading of the whole thereof indicates quite obviously that she meant the matter then being inquired into, to-wit, her looking back for the other couple's car and its movements, and did not refer to the interval of time or space after they reached Prospect. If she could "pretty well remember everything" before the wreck, there would seem to be no occasion to let such an important fact as that sought to be inferred rest upon inference.

As to the second proposition urged, it should be said that the first difficulty with the position is that the fact upon which it is based is itself assumed. Of course, there was no direct evidence whatever as to whether plaintiff did or did not swerve or veer his course before he reached the point of collision, and the only circumstance that may be thought to point to his not having swerved and hence struck at right angles is that a photograph shows the imprint of an automobile wheel at the extreme left of the front end of the diesel at the bottom edge thereof or level of the rail. But it is utterly impossible to determine with any degree of certainty from this alone, or in conjunction with the other evidence, the angle at which the impact occurred between the two instrumentalities—whether right, obtuse or acute. It is equally impossible to determine such angle from an examination of the photographs of the car. It was carried north beyond the crossing and along the track for a very considerable distance, so that we cannot know, even generally, at what juncture the several crumplings of the car body occurred.

As to the fireman's testimony, it seems obvious that his inability to recall the color of the car is as readily referable to faulty memory or stress of excitement

as to any idea that he did not remember its color because the diesel's headlight was not burning. He admittedly did not see the reflection of the headlights of plaintiff's automobile, but this failure was not unexplained. Note the reason assigned by him, "[T]here's a big light over there [in the northeast quadrant of the intersection] and it's daylight and you can't see the reflection of the lights of a car." On the basis of this explanation, a fact contrary to it is not to be inferred. In his deposition he did say he had no judgment as to the speed of the automobile, but on later development of that subject in the same deposition he stated it was traveling faster than the train (the speed of which he fixed at 40 m. p. h.), and that after seeing plaintiff's automobile emerge from the end of the D–X warehouse, he (plaintiff) "traveled like a flash and was into us." In this situation it is entirely inaccurate to say that the fireman had no judgment as to the speed of the train, and hence no inference based on any such supposed lack of knowledge is to be drawn.

■ We are of the opinion, and so hold, that the circumstances upon which plaintiff relies as hereinabove enumerated are insufficient to warrant an inference that the headlight of the diesel was not burning. Plaintiff makes the further contention that even if the engine's headlight were burning, the question of his contributory negligence was still one for the jury, and not to be ruled as a matter of law, under the cases of Bluedorn v. Mo. Pac. R. Co., 121 Mo. 258, 25 S.W. 943; Dickerson v. Terminal R. Ass'n of St. Louis, Mo., 284 S.W.2d 568, and Doyel v. Thompson, 357 Mo. 963, 211 S.W.2d 704. These cases are so dissimilar on their facts as to render them of no persuasive influence on the question just stated. The Bluedorn case involved a switchman who was injured in a switching operation at night in a railroad yard when he stepped in front of a passing train. In the Dickerson case the plaintiff was not the driver, but was riding in a truck that was struck by a locomotive at a crossing on private property within the enclosure of a manufacturing plant. The Doyel case involved an obstructed, right-angle grade crossing, and the accident occurred on a misty, damp, foggy night, and it was inferable that the headlight dimmers were on, so that the locomotive's headlight was not burning brightly. The road near the crossing was rough with a mudhole in it. The plaintiff had stopped, looked and listened for approaching trains at a place where statutory warning signals, if given, would have been audible to him, so it was held he was entitled to assume that if a train were approaching he would have heard the statutory warning, and the fact that he did not stop, look and listen a second time, or get out and go forward to reconnoiter prior to his actual discovery of the approaching train did not constitute contributory negligence as a matter of law. Plaintiff testified he did not see the reflection of the headlight as he approached the crossing (although he did actually see the headlight before he was struck, but was confused as to which of the three tracks it was on) and he had evidence that in the circumstances there present, his automobile headlights would tend to cut out the locomotive's headlight which was 150 feet from the crossing, and so it was held that his testimony that he did not see the reflection of the locomotive's headlight as he approached the crossing was not so opposed to physical facts as to be wholly unbelievable and to convict him of contributory negligence as a matter of law. There is nothing in any of these cases to militate against our previously expressed view (as adopted from the draft opinion) that, absent the inference sought to be drawn, plaintiff would inescapably be deemed contributorily negligent as a matter of law.

■ There was no issue raised at the trial with respect to the diesel's headlight not being in operation at the time of the casualty, nor hint or suggestion anywhere in the record, including arguments of coun-

sel to the jury, that such was the fact. Being neither substantial evidence that the headlight was not burning, or basis for so inferring, it follows (from the other evidence hereinabove considered which was either produced by plaintiff, or conceded by him to be true) that plaintiff's failure to avoid driving in front of the train constituted contributory negligence as a matter of law. Accordingly, the judgment must be, and it is, reversed.

All concur.