**SPECTOR FREIGHT SYSTEM, INC.,**
Plaintiff-Appellant,

v.

**MISSOURI PACIFIC RAILROAD COM-
PANY, Defendant-Respondent.**

No. 24786.

Kansas City Court of Appeals.

Missouri.

Feb. 5, 1968.

John C. Russell, Kansas City, for plaintiff-appellant.

Johnson, Lucas, Bush & Snapp, Hillary A. Bush, B. Kent Snapp, James L. Burgess, Kansas City, for defendant-respondent.

JAMES W. BROADDUS, Special Commissioner.

In this action plaintiff sought property damages against defendant in the amount of $7,857.85.

At the conclusion of plaintiff's evidence defendant filed a motion for directed ver-

dict which the court sustained. Judgment was entered for defendant and plaintiff has appealed.

Plaintiff was the owner of a tractor-trailer unit which, while being operated by its employee, Elmer Wayne Ward, on U. S. Highway 24 collided with one of defendant's trains.

The accident happened in the afternoon of July 14, 1960, which was a "clear" day. U. S. Highway 24 is a two lane concrete road running in a generally north-south direction. Near Lexington, Missouri, it is intersected by a single track of the Missouri Pacific Railroad, running in a generally east-west direction. The truck involved in the accident approached this intersection from the south and the train approached the intersection from the east.

The view Ward had down the railroad track to his right, the direction from which the train was coming, was obstructed by a row of trees. However, the right-of-way of both the highway and the railroad was cleared and the trees which obstructed the view were on the land of a farmer. The cleared highway right-of-way extended 75 feet from the edge of the road to the tree line and Ward could see 75 feet down the railroad track.

Ward, prior to the accident, was aware that he was approaching and about to cross a railroad track. He testified that he crossed this track six times a week; that on the day of the accident, he saw a crossing sign some 800–900 feet from the crossing, and that from that point he could also see the actual track and the sawbuck signs guarding it; there there was no doubt in his mind that he was approaching and about to cross a railroad track.

The speed of the truck Ward was operating was 40 to 45 miles per hour and this speed continued constant until the truck reached a point some 200 feet from the track, at which time Ward first saw defendant's train and first applied his brakes. The truck's stopping distance at this speed was 200 feet. The train was moving at about 25 to 30 miles per hour. Ward had almost stopped the truck during the 200 feet he traveled after he first saw the train and applied his brakes, but struck the train about 10 feet back of the front end of the second diesel locomotive.

Plaintiff's brief gives this description of what took place: "Due to the presence of the row of trees to the east and on Ward's right, he was unable to see defendant's engine until it first appeared from behind this obstruction of view and, at this time, Ward was approximately 200 feet from the crossing and traveling at a speed of approximately 45 miles per hour, with no prior warning having been given by the engine, itself, or the railroad. Ward's testimony was to the effect that he kept looking to his right and at the leading edge of the tree row and heard nothing in the form of a whistle, bell or horn, nor did the witness, Wohlgemuth, traveling behind him, hear any form of warning. Ward immediately applied his brakes and made every effort to bring the truck to a stop but was unable to do so."

Plaintiff contends that the court erred in sustaining defendant's motion for directed verdict "in that by virtue of the evidence as adduced, plaintiff was not guilty of contributory negligence as a matter of law and the question of liability was one for the jury."

The evidence is clear that plaintiff's driver, Ward, knew he was approaching and about to enter upon a railroad crossing. He had previously traveled across this particular crossing six times a week. He admitted that he saw the yellow warning sign when he was 800–900 feet away from the crossing. This sign, he admitted "refreshed your recollection and reminded you that you were about to cross the track." Even at this distance, he testified that he could actually see the track and the sawbuck signs guarding it. He also knew that his line of sight down the railroad track to his right was obstructed by trees and that

he could not see an approaching train until it was within 75 feet of the highway. He also knew that at the speed he was traveling he could not stop in less than 200 feet. Yet, despite this knowledge, he continued at the same rate of speed without slackening, toward an obscured railroad crossing, where he knew a collision with a train might very well occur.

■ The law governing this case is well settled. It is stated in the fairly recent case of Pipes v. Missouri Pacific Railroad Company, 338 S.W.2d 30, 35 (Mo.Sup.) as follows:

"It has often been said 'that a railroad track itself is a warning of danger, and that a highway traveler must exercise care commensurate with the circumstances—a motorist, the highest degree of care. [§ 304.010 RSMo 1949 and V.A.M.S.] If his view is obstructed, he must do whatever is necessary and possible to safeguard himself—by *having his car under control, slowing up, stopping, listening, and continuing to look until he can see, even up to the crossing.*' Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 248, 172 S.W.2d 835, 848. Further, his duty to look is not performed by looking only from a point at which his view is obscured, but he must look at a place where, if possible, he may see the track, i. e., he must look at a place where it is reasonably effective to do so; and that a motorist approaching a railroad crossing with which he is familiar, who fails to look or to see that which is plainly visible if he performs his duty to look, is contributorily-negligent." (Emphasis added).

■ Under the law it became Ward's duty, in the exercise of the highest degree of care, to slow down his truck as he approached a known railroad crossing at which his view of the track was obstructed, and to keep it under such control that he could stop short of the track if a train suddenly appeared. His duty to look, and particularly his duty to keep his truck under control, was not satisfied when he looked at a point where he could not see down the track. He was required to continue looking "even up to the crossing" and at a point where he could see that it was safe to cross, and was required to have his truck under such control that he could stop in safety if a train did appear. This he did not do. As we have stated, the evidence shows that he drove his truck toward a known railroad crossing at a speed of 40–45 miles per hour, knowing that at that speed he could not stop the truck in less than 200 feet and knowing that a train approaching on that railroad track would not be visible to him until it reached a point 75 feet from the crossing. His duty under the law was clear. He was required to slow his truck and get it under such control that he could stop short of a collision if a train should suddenly appear. Yet his own testimony is that he did not slow his truck, he took no measures to keep it under control, but continued toward the track at the same speed and applied his brakes only after he actually saw the train at which time he was too close to the crossing to stop in safety. He was, as the trial court ruled, guilty of contributory negligence as a matter of law.

We have considered the cases cited by plaintiff. They are readily distinguishable from the instant case.

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.