Anna BAXTER, Appellee,

v.

MISSOURI–KANSAS–TEXAS RAILWAY
COMPANY, Appellant.

No. 71–1253.

United States Court of Appeals,
Eighth Circuit.

Jan. 20, 1972.

Rehearing Denied Feb. 9, 1972.

Joseph E. Stevens, Jr., Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Irwin E. Blond, Kansas City, Mo., for appellant.

William Y. Frick, Kirksville, Mo., Henry Panethiere, Kansas City, Mo., Frick & Mayberry, Kirksville, Mo., for appellee.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This suit arises out of the death of James Jewell Baxter. He was killed when the automobile he was driving collided with the engine of a train owned and operated by the defendant, the Missouri-Kansas-Texas Railway Company. The case was tried to a jury. The railway has appealed from the $25,000 judgment entered against it pursuant to the jury verdict.

The accident took place at about 11:00 p. m. on March 10, 1968 at a grade crossing maintained by the defendant on Route HH in Montrose, Missouri. The general area was a familiar one to Baxter. The defendant maintains two tracks at the crossing, a spur or house track on the north, and then, some 60 feet south, the main line. Route HH runs in a general northerly-southerly direction. The railway's two tracks run in a general easterly-westerly direction. They thus intersect Route HH at an angle of approximately 60 degrees. The crossing is guarded with a cross-buck and warning bell. The bell is said to ring not very loud.

The evening of the accident was clear and chilled. Baxter's car, with the windows closed and the heater in operation, approached the crossing from the north and while on the main line was struck by the train proceeding from west to east at a speed of about 30 miles an hour.

As he approached the main track from the north, Baxter's view to the west was partly obstructed by a group or row of buildings maintained by the railway some 10 feet north of the spur track, none of which is less than one story in height. These buildings parallel the two tracks in a westerly direction for some 314 feet. The path across the spur track is extremely rough and uneven. The 60 feet between the spur track and main line consists of pavement sloping, from the north, upgrade to the main track. The crossing is illuminated by street lights on the southeast side of the intersection. There was evidence that Baxter proceeded across the tracks without diminution of speed; that the whistle of the train was not sounded within and during the time prescribed by appropriate Missouri statute,[1] and that the train was proceeding at a rate of speed in excess of that prescribed by an ordinance of the city of Montrose.[2]

The issue of contributory negligence was submitted to the jury by an appropriate Missouri instruction[3] asserting that three findings were necessary to return a verdict for the railway: (1) that Baxter "either failed to keep a careful lookout, or failed to heed an adequate and timely signal, if you find the same was given at the time and crossing in question; or failed to yield the right of way to defendant's train;" (2) that Baxter's conduct in any one or more of the foregoing respects was negligent; and (3) that any such negligence on the part of Baxter "directly caused or directly contributed to cause any damage * * *" Baxter may have sustained. With regard to the railway's liability, the instructions authorized a verdict for the plaintiff upon a finding that the railway operated its locomotive at a speed in excess of that prescribed by the Montrose ordinance or, alternatively, that it failed to give an adequate and timely signal of its approach. Neither

1. Missouri law requires the ringing of a bell or the blowing of a whistle or horn at least 80 rods from any public crossing. The statute further requires that the ringing of the bell or the blowing of the horn or whistle continue until the locomotive has passed the crossing. V.A.M.S. § 389.990. This statute fastens liability upon the railroad for damages sustained when the prescribed warning is not given, but does not preclude the railroad from establishing that the failure to warn was not the cause of the injury.

2. § 9 of Ordinance No. 0006 proscribes a train from operating at a rate of speed in excess of 15 miles an hour in and through the corporate limits of the city of Montrose.

3. Compare Missouri Approved Jury Intructions, § 28.01.

specification of railway negligence is before us on this appeal.

The railway, at the conclusion of Mrs. Baxter's case, and, again, at the close of its testimony, moved for a directed verdict in its favor on the claims against it, and after the verdict and judgment had been entered, also moved for judgment notwithstanding the verdict. The motions were all denied by the court (The Honorable Elmo B. Hunter). On this appeal the railway urges that the trial court erred in denying these motions because, as a matter of law, Baxter was contributorily negligent. That contention, as we understand it, rests upon certain defense expert testimony to the effect that Baxter had, before reaching the tracks, a clear space of 80 feet within which the train was plainly visible had he looked. In other words, the defense asserts that the evidence conclusively establishes the existence of an ample, unobstructed view for a driver who properly looks along the tracks to see if a train is approaching. We do not believe, in the light of the particular circumstances shown by this record, that this evidence suffices to establish contributory negligence as a matter of law.

The basic Missouri rule as to whether contributory negligence has been established as a matter of law in railroad crossing cases is that pronounced in Zumault v. Wabash Railroad Company, 302 S.W.2d 861, 862–863 (Mo.Sup.1957):

"Before the court can declare that contributory negligence is shown as a matter of law, such negligence must clearly appear from admitted or conclusively proved facts. If reasonable men may honestly differ with respect to the inferences to be drawn from such facts, then the question whether the driver exercised the care required for his own safety is for the jury."

Honeycutt v. Missouri Pacific Railroad Company, 440 S.W.2d 481, 484 (Mo.Sup. 1969); Hardy v. St. Louis-San Francisco Railway Company, 406 S.W.2d 653, 658 (Mo.Sup.1966); Crawford v. McNece, 388 S.W.2d 809, 813 (Mo.Sup. 1965) (automobile rear-end collision case); Harrison v. Weisbrod, 358 S.W. 2d 277, 284 (Mo.App.1962) (automobile intersectional collision), and Fugate v. St. Louis-San Francisco Railway Co., 348 S.W.2d 718, 723 (Mo.App.1961). Taking that view of the evidence which is most favorable to Mrs. Baxter as the prevailing party at trial, and according her the benefit of inferences reasonably to be drawn from the facts proved, we apply this rule to the factors upon which the defense relies.

(1) So far as the railway's contention on the failure-to-heed-a-timely-whistle issue is concerned, there is a sharp conflict in the evidence. The defense introduced testimony indicating that the whistle was sounded.[4] Mrs. Baxter, on the other hand, introduced testimony to the effect that no whistle was given.[5] It is obvious, therefore, that the situation is the usual one of conflicting testimony, the resolution of which properly was a matter for the jury.[6] And, we are not prepared to say, on the cold record, that the trier of fact, here the jury, would err as a matter of law in accepting, if it did, the testimony of Mrs. Baxter's witnesses and in not accepting that of the railway. We therefore conclude that there is not sufficient evidence to support a finding that Baxter was, as a matter of Missouri law, contributorily negligent in failing to heed a timely whistle.

 (2) The lookout and right of way issue. The railway stresses its expert testimony to the effect that, when Baxter was 80 feet from the crossing, he

---

4. The railway's fireman specifically stated on direct examination that the whistle was sounded at the Route HH crossing.

5. Two Montrose residents, both of whom lived in close proximity to the crossing and who were in a position to hear, testified that they did not hear the whistle.

6. Compare Ledkins v. Missouri-Kansas-Texas Railway Co., 316 S.W.2d 564, 570 (Mo.Sup., 1958), and cases there cited, and Herrell v. St. Louis-San Francisco Railway Company, 322 Mo. 551, 18 S.W. 2d 481, 483 (1929).

had a totally unobstructed view towards the approaching train and, as well, when 100 feet from the crossing, he had visibility in excess of 200 feet. It would buttress these uncontradicted physical evidentiary facts with its testimony that the approaching train was proceeding with its headlights functioning. The railway, on its brief, also stresses the two Missouri cases of Davenport v. Wabash Railroad Company, 435 S.W.2d 641 (Mo.Sup.1968) (en banc) and Pipes v. Missouri-Pacific Railroad Company, 338 S.W.2d 30 (Mo.Supp.1960) (en banc). In both these cases, jury verdicts were jettisoned upon appellate findings of contributory negligence as a matter of law. We do not view either of these cases as dispositive of the issue of significance here. In *Davenport*, unlike this case, the collision occurred shortly after noon, on a clear, dry and warm fall day. Thus, the facts there are so dissimilar from those here that the respective duties of care devolving upon the automobile driver and railroad alike are of necessity appreciably different. In Pipes v. Missouri-Pacific Railroad Company, a case much closer upon its facts, the Missouri court thought the physical conditions and special circumstances attending the early-morning collision were such that the driver there corresponding to Baxter here had to have seen the approaching train unless there was evidence from which to infer that the headlight on the train was not burning. Finding no such evidence, the court held that Pipes' failure to avoid driving in front of the train constituted contributory negligence as a matter of Missouri law. pp. 36–39 of 338 S.W.2d. Thus, *Pipes* authoritatively declares that a motorist is to be charged, as a matter of law, with seeing that which is plainly visible to one who looks.[7]

Here, however, the particular facts and circumstances surrounding the accident do not justify a finding that Baxter was contributorily negligent as a matter of law, either because he neglected to look or because having looked, he did not see what was plainly to be seen. Indeed, so to hold is to ignore the very specifications of primary negligence relied upon by Mrs. Baxter.

■ It is a reasonable conclusion from the testimony that the railway's train was being operated at a rate of speed in excess of that provided by law and that it failed to sound the statutory warning. While it is true that Baxter was under a duty to operate his vehicle "in a careful and prudent manner" and with "the highest degree of care", as required by V.A.M.S. § 304.010 subd. 1, it also is true that he could place some reliance upon the railway's observance of the speed and warning requirements.[8] Within this framework of analysis, the jury could reasonably conclude either that Baxter, given the absence of the statutory warning, first looked to the east and, in then looking west, found himself so far into the zone of danger that he could not escape except by proceeding across the tracks, or that he first looked to the west but erroneously assumed (1) that the train was proceeding at a lawful rate of speed and (2) that he had ample time to clear the tracks. Against the background of ei-

7. See Baldwin v. Atchison, Topeka & Santa Fe Railway Company, 425 S.W.2d 905, 910, 912 (Mo.Sup., 1968). Accord, Silvey v. Missouri Pacific Railroad Company, 445 S.W.2d 354, 360 (Mo.Sup.,1969), where the Missouri court construes *Davenport* and *Pipes* to mean that:
 "[A] driver approaching a railroad crossing has a warning of danger from the track itself; * * * he must keep a continuous lookout, and he must drive at such a speed (stopping if necessary) that he may look from a point where looking will be effective, that is to say, from which he may see danger while he still has the distance in which and the means with which to stop before reaching the track. He must not only look, but he must see, and this from a place where he can effectively act."

8. Zumault v. Wabash Railroad Company, *supra*, p. 865 of 302 S.W.2d, citing with approval, Todd v. St. Louis-San Francisco Railway Company, 37 S.W.2d 557, 560 (Mo. Sup., 1931).

ther of these two hypotheses,[9] each of which reasonably can be inferred from the evidence, reasonable men could honestly differ with respect to the prudence and effect of Baxter's conduct. We therefore conclude that Judge Hunter was right in submitting to the jury the question of Baxter's contributory negligence on the lookout and right of way issue and that there was sufficient evidence to sustain the jury verdict.[10]

Affirmed.

9. In postulating these two hypotheses, we do not mean to imply that the jury was precluded from considering the real and appreciable hazards arising from the accident scene itself. Baxter was initially confronted by a series of buildings which obscured his view to the west; before negotiating the main line, he was required to devote considerable attention to clearing the rugged spur track. We simply deem it unnecessary to calibrate the reasonableness and effect of Baxter's conduct in the context of these conditions.

10. Compare, as to the nature of the question of whether a proper lookout has been maintained, Bates v. Hensley, 414 F.2d 1006, 1010 (CA 8 1969).