**Herbert E. NAEGER (Plaintiff), Respondent,**

v.

**Valentine NAEGER (Defendant), Appellant.**

**No. 30437.**

St. Louis Court of Appeals.

Missouri.

Oct. 18, 1960.

Dearing, Richeson & Weier, Samuel Richeson, Hillsboro, for appellant.

Thurman, Nixon & Blackwell, Jeremiah Nixon, Hillsboro, for respondent.

RUDDY, Judge.

This is an action for damages for personal injuries sustained by plaintiff. Defendant has appealed from a verdict and judgment for plaintiff in the amount of $1,000. In his original petition plaintiff sued his father, Henry J. Naeger. Later he joined his brother, Valentine N. Naeger, as a defendant. After the trial commenced plaintiff dismissed his cause of action against the father and proceeded against the brother only.

On January 15, 1958, pursuant to a request of his father, plaintiff went to the father's farm to assist him in testing some cows for Bang's disease. Also helping the father were the defendant, two other brothers of plaintiff, a neighbor, and a veterinarian and his helper. The method invoked on this day for testing the cows was to drive all of the cows and the bull that injured plaintiff into a cattle barn. Inside the barn was a pen about ten by twelve feet in size. The pen was in one corner of the barn and consisted of two wooden gates about five feet high which made up two sides of the pen and the two sides of the barn were the other sides of the pen. The test consisted of taking blood samples from the cows by means of a needle inserted in the neck of cow. The veterinarian took the blood samples. In order to take the sample of blood, it was necessary to drive the cow into the small pen and there, by devious and various means, seek to have the cow enter a metal chute or stanchion which opened into the pen. The cow would be restrained in the chute, the blood sample taken and then would be released.

Inside the pen was a manger extending along one side of the barn wall and directly opposite the chute. This manger extended 16 inches above the ground., the outside of which was at a right angle to the ground and was used in the feeding of cattle.

Approximately fifteen cows had been put through the chute and blood samples extracted, apparently without difficulty. All that remained for testing was the three year old Black Angus bull that had witnessed the testing of the cows. Obviously, what he saw was not to his liking. Apparently, the bull entered the pen without incident. After he entered the pen no amount of cajoling, threats or enticement would drive the bull into the metal chute. He showed no inclination to move from the center of the pen. Defendant in some manner entered the pen and gained a place of safety inside the manger. At that time the bull was standing about six feet from and broadside to the manger. With the bull in this position, and defendant in the manger, defendant proceeded to rain blows on the bull with a wooden club, but without effect. The bull continued to remain unmoved.

One of the gates rested against the manger. While defendant was hitting the bull plaintiff was standing at this gate outside of the pen and, as he said, "right by the manger." Plaintiff had a pitchfork in his hand, which he had used in persuading the cows to enter the pen and the chute. When plaintiff saw that his brother's efforts were not meeting with success, he decided to join his brother, the defendant, in the manger and from this vantage point it was his intention to stick the bull with the pitchfork in an attempt to drive the bull into the metal chute. Defendant stopped hitting the bull with the club and at this point plaintiff opened the gate alongside of the manger and stepped into the pen. When plaintiff entered the pen, the bull was facing him. Before plaintiff reached the manger inside the pen, defendant again started hitting the bull with the club. The bull then moved in the direction of plaintiff. Plaintiff described it as follows: "After he (defendant) hit the bull, the bull came toward me. * * * It mashed me against the manger." Plaintiff said he attempted to avoid the bull by trying to hop in the manger. He said, "I couldn't quite make it." The bull struck him while he was in the act of hopping into the manger. Plaintiff in further explanation of what happened said, that as he stepped inside the pen defendant started hitting the bull before he had a chance to get his pitchfork in position to protect himself and before he had a chance to reach the safety of the manger. Plaintiff's right leg was broken at the ankle.

Plaintiff in his cross-examination admitted that the gate which he opened to enter the pen "was right up against the end of the manger." He further admitted, as we have heretofore pointed out, that it was his intention to climb up into the manger after he got into the pen, before he would jab the bull with the pitchfork. He was then asked, "So, couldn't you have climbed over that part of the gate that was against the edge of the manger and landed in the manger?" and he answered, "It was a lot easier to get inside the fence." Further cross-examination developed that he thought it was easier to open the gate than to climb over the top of the gate to reach the manger. Plaintiff was the only witness to testify at the trial.

Defendant contends that plaintiff's evidence fails to show sufficient facts from which a jury could find defendant negligent and further contends that in any event plaintiff was guilty of contributory negligence as a matter of law.

In support of his first contention, plaintiff states that if a number of blows would not move the bull before plaintiff entered the pen, the conclusion is inescapable, that if the bull moved after plaintiff entered the pen, when only one blow was struck, it must have been on account of the presence of plaintiff in the pen with the pitchfork, or because the gate was open behind plaintiff, and not because of the one blow then struck by defendant. We cannot be certain that only one blow was struck. The only testi-

mony given on this point shows that defendant started to hit the bull after plaintiff entered the pen. No place in plaintiff's testimony was it shown that the gate was open when the bull moved. This much is certain, that plaintiff had to open the gate to get into the pen, but there is no evidence to show how far it was opened or if it was open when the bull moved towards plaintiff.

We fail to follow defendant's reasoning when he says that because the first blow failed to move the bull, it must have moved for another reason and not because of the additional blow or blows. The sole intention of defendant in striking the bull was to make it move and that it responded immediately to defendant's intention, after plaintiff entered the pen, was amply demonstrated by plaintiff's testimony. We think the testimony was sufficient to permit the jury to find that it was the additional blow or blows that caused the bull to perambulate rapidly in the direction of plaintiff. The evidence does show that the bull moved when it was struck by defendant after plaintiff entered the pen.

Defendant also asserts that plaintiff was cognizant of what the defendant was doing and what he might be .expected to do with respect to trying to get the bull to leave the pen and enter the chute. In this connection, defendant further asserts that his attempt to move the bull by striking it with the wooden club was the usual, ordinary and accepted manner of doing so and that plaintiff could reasonably expect that defendant would again strike the bull and thus defendant claims there was no negligence in his behavior.

■ The evidence, as we view it, from which the jury could find negligence, was not just that which showed a blow or blows were struck by the defendant after plaintiff entered the pen, but was that from which the jury could find that at the time the blow or blows were struck defendant knew, or should have known, that plaintiff was not in a position where he could protect himself if the bull moved and

that plaintiff had not reached the protection of the manger. It must have been obvious to the defendant that a position inside the pen, outside of the protection of the manger, was one of danger, for defendant sought the safety of the manger before proceeding to hit the bull. We think that the evidence was sufficient from which the jury could find that defendant knew, or should have known, that plaintiff had not reached a place of safety and should have waited until plaintiff reached the protection of the manger before again striking the bull. We agree with defendant that plaintiff could have reasonably expected that defendant would again strike the bull, but it was the untimeliness of the striking that makes defendant's action a submissible jury question as to whether or not he exercised due care under the circumstances then present.

Defendant relies on the case of Panke v. Shannon, 357 Mo. 1195, 212 S.W.2d 792, which involved an action for damages sustained as a result of injuries inflicted by an unruly mule. The court in that case held that the evidence failed to show when defendant's tenant applied the twitch or how much pressure he put on it before plaintiff was kicked by the mule. The court said: "It is just as reasonable to find that it was so tightened, after plaintiff was kicked, to get the mule under control then." 212 S.W.2d loc.cit. 794. The court also said: "It was not even shown that the mule to which the twitch was applied was the one that kicked" plaintiff. 212 S.W.2d loc.cit. 793.

The facts in the aforesaid case do not parallel the facts in the instant case. In the present case the evidence shows that the bull moved toward plaintiff after it was struck by defendant.

■ In support of the point relied on by defendant that the evidence shows plaintiff was guilty of contributory negligence as a matter of law, he states that plaintiff knew "that defendant had or was going to strike the bull" and that because plaintiff was

possessed of this knowledge he was guilty of contributory negligence in getting into the pen. Defendant did not testify and there was nothing in plaintiff's testimony to show that he knew defendant would resume hitting the bull before he (plaintiff) reached a place of safety in the manger.

Plaintiff's testimony shows that he waited until defendant stopped hitting the bull with the wooden club before entering the pen. He also testified it was his intention to join defendant in the manger before attempting to prod the bull with the pitchfork. No cases are cited by defendant in support of this contention. There is nothing in the evidence that convicts plaintiff of contributory negligence as a matter of law. Whether or not plaintiff was guilty of contributory negligence was properly submitted to the jury in an instruction offered by the defendant and given by the trial court.

We rule that there was sufficient evidence from which a jury could find that defendant was negligent. Also, the evidence fails to show that plaintiff was guilty of contributory negligence as a matter of law.

In the course of the closing argument by plaintiff's counsel he told the jury:

"If he (defendant) had delayed in hitting the bull one-half of a second on a jump like that, I think you could find that Herbie wouldn't have been injured. I think you could find just one-half of a second or a second, if he had just held off that long, before he hit the bull, in order to give his brother a chance to get into a place of safety. And now they come in and say the mere fact that he came through the gate, in itself, nothing more, means that you should excuse the brother for what he's done *and I say to you, that the defendant here is not too concerned about that. The defendant himself isn't.* And bearing in mind the entire history of the testi-

mony here, I think that you can so find * * *." (Italics ours.)

At this point an objection was made by counsel for defendant and he interposed a motion in which he asked the trial court to discharge the jury and to declare a mistrial "on account of the improper injection of the issue of insurance into this case." The trial court after a colloquy with the attorneys overruled the objection and denied the motion. Plaintiff's counsel then told the jury, "And the fact that the defendant didn't take the stand, I think indicates that to my satisfaction, at least."

During the voir dire examination the jurors were asked if any of the members of the panel had a policy of insurance with the Missouri Farmers Association Insurance Company. Several members stated they had insurance with the Company, but said that this fact would not affect their judgment in the instant case.

Defendant now contends that this experience with the jury panel during the voir dire examination coupled with the part of the argument of plaintiff's counsel we have set out in italics above was an offer and invitation to the jury to realize that the defendant would not suffer from a verdict for the plaintiff in this case and that it would be paid by the insurance company. Defendant has cited a number of cases which we have examined. In all of the cases the arguments contained, either a direct reference to the existence of insurance in the case or an indirect reference by promising the jury that defendant would not have to pay any of the verdict brought in by the jury. In all of those cases it was held that the argument injected insurance in the case which was prejudicial to the defendant.

In one of the cases relied on by defendant, i. e., Phillips v. Vrooman, Mo., 251 S.W.2d 626, loc.cit. 630, the court said:

"In ruling the propriety of argument, a trial judge may determine how the jury might reasonably construe the

language used. Often the language itself is so clear that there can be no doubt as to its meaning. However, in many instances, the language may reasonably be said to convey more than one meaning. In such event, the trial judge's determination of the propriety of the argument need not necessarily be based solely on the language itself. The argument may be interpreted by the trial court in its 'setting' and against its 'background'— in short, in the light of the other circumstances of the particular case."

One of the circumstances of the instant case is the fact that the defendant did not testify in the case, nor did he produce any witnesses. The record discloses that defendant was present at the trial. At the time of the voir dire examination he was asked to stand so he could be viewed by the jurors. Therefore, he was present at the beginning of the trial. We think the language employed by plaintiff's counsel in his argument and complained of by defendant's counsel at the trial and in this court may reasonably he said to convey more than one meaning. Defendant's counsel in his argument referred to the failure of plaintiff to call certain witnesses. Plaintiff was within proper bounds in showing that defendant failed to testify in the case and, therefore, showed a lack of concern about the case. Whether or not this was an indirect reference to the existence of insurance coverage in the case we think must be left to the discretion of the trial court to be weighed by him in the light of all the circumstances present during the trial. Fundamentally, it is a question of whether the argument was a bad faith attempt to emphasize the matter of insurance in the case in order to prejudice the jury.

In the case of Haley v. Edwards, Mo., 276 S.W.2d 153, loc.cit. 160, the Supreme Court in ruling on a contention similar to the one made in the instant case said:

"Whether a mistrial should be declared under such circumstances rests largely within the discretion of the trial court. The court's ruling is to be interfered with only in the event of abuse of that discretion. We find no such abuse here."

We find no abuse of the trial court's discretion in the respect complained of by defendant.

The final point urged by defendant is that the trial court erred in admitting over defendant's objection testimony of the plaintiff, that he had lost ten weeks unemployment compensation as a result of his injury. It is the contention of defendant that this loss was not a proper element of damage and that its admission was prejudicial to the defendant.

██ Plaintiff testified that prior to the injury he was unemployed and was receiving $33 per week unemployment compensation. He further testified that he lost ten weeks of unemployment benefits. Apparently his unemployment compensation was terminated because he was no longer available for work due to his disability. As said by George A. Rozier in an article explaining the Employment Security Law of Missouri found in 15 V.A. M.S., p. 415, at loc.cit. 421:

"In the first place, a beneficiary must be unemployed because this is what the law undertakes to insure against; second, he must be able to work because losses due to sickness or disability are not within the objectives of the insurance program; third, he must be available for work * * *."

Section 288.040 RSMo 1949, 15 V.A.M.S., p. 448, provides in part that a claimant shall be eligible for benefits if "(2) He is able to work and is available for work * * *."

There is no contention made by defendant that plaintiff was not receiving unem-

ployment compensation, nor is there any denial that it was terminated after plaintiff's injury. The only contention made is that it is not an item that may be considered by the jury in assessing plaintiff's damage.

We have not been referred to any case that rules on the point raised, nor have we been able to find one in our own independent research. Defendant does cite the case of Joshmer v. Fred Weber Contractors, Inc., Mo.App., 294 S.W.2d 576, decided by this court, which we find wholly inapplicable to the point raised in this case. We held in that case that the jury should not take into consideration the amount plaintiff received in the nature of relief from a government agency *in mitigation* of plaintiff's damages. In the instant case we are confronted with whether a benefit that is granted to the plaintiff under the Laws of the State of Missouri and the United States and has been terminated because of the injury inflicted through the negligence of the defendant is recoverable at law from the wrongdoer.

There is no contention that plaintiff did not qualify for the benefits under the law. The fact that he was receiving benefits at the time of his injury is ample to show that he qualified for the benefits. Therefore, he was receiving these benefits as a matter of right under the law. We view the object of the law granting unemployment compensation as one to give to the person who qualifies under the law a weekly sum of money in lieu of the wages that have been terminated. If he qualifies he is possessed of a right that cannot be taken away or denied. Wherever there is such a right and it has been interfered with, causing damage to the plaintiff, if it is capable of admeasurement, it is recoverable from the defendant. We think this loss of unemployment benefits is a proper element of damage to be considered by the jury and is recoverable from the defendant. If, instead of unemployment benefits in lieu of wages, the loss had been wages, certainly defendant would not contend the lost

wages were not recoverable. We see no difference, nor are we able to visualize any logical distinction between lost wages and lost benefits attributable to the negligence of defendant.

Defendant argues that to allow recovery for this item is engaging in surmise and speculation because there are conditions wholly unrelated to the accident under which plaintiff might have lost the unemployment compensation. The same could be said about lost wages. Plaintiff might become ill, or his employer might terminate his employment for some reason or the plant in which plaintiff is working might be destroyed. Yet the law permits recovery for wages lost as a result of injury despite the possibility of the happenings stated.

The rule that governs in this situation is stated clearly in 15 Am.Jur., Damages, § 23, p. 414, and is as follows:

"There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable the jury to fix the amount. Formerly, the tendency was to restrict the recovery to such matters as were susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery."

There is no uncertainty about the fact that plaintiff was receiving unemployment benefits and that these benefits were terminated because of the injury sustained. Therefore, the possibility that some condition unrelated to the accident might have occurred which might have terminated plaintiff's unemployment benefits, does not preclude the submission of this item of loss

to the jury for their consideration in the assessment of damages.

Plaintiff's loss of these benefits was the direct and proximate consequence of the defendant's negligent act as found by the jury and plaintiff was entitled to recover for this loss. The trial court did not err in the admission of the testimony of plaintiff concerning these benefits and their termination.

Finding no error, the judgment of the trial court should be affirmed. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.