Charles WALTERS, Plaintiff-Appellant,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Defendant-Respondent.

No. 37257.

Missouri Court of Appeals,
St. Louis District,
Division Two.

May 23, 1978.

Motion for Rehearing and/or Transfer Denied July 14, 1978.

Application to Transfer Denied Sept. 12, 1978.

Alan E. Popkin, Richard C. Witzel, Stan J. Goodkin, Rosecan, Popkin & Chervitz, St. Louis, for plaintiff-appellant.

Robert C. Ely, St. Louis, for defendant-respondent.

REINHARD, Judge.

This is a suit for damages for permanent injuries received by plaintiff when his automobile was struck by defendant's train. The jury returned a verdict in favor of plaintiff in the amount of Eleven Thousand Dollars ($11,000.00), but the court sustained defendant's motion for judgment in accordance with defendant's motion for a directed verdict at the close of all the evidence. Plaintiff appeals.

The accident occurred on the evening of November 23, 1971, at the intersection of Bartold Avenue and defendant's single set of railroad tracks in Maplewood. In the immediate vicinity of the intersection, Bartold runs in a northerly-southerly direction, and the tracks intersect Bartold in a generally easterly-westerly direction. Approximately 200–250 feet south of the crossing, Bartold winds sharply to the west. To a motorist proceeding north on Bartold, the railroad crossing becomes visible just after he rounds the turn. From this point, Bartold grades downward until it intersects with Manchester Road.

As one approaches the tracks from the south, his view to the west is obstructed by a hill which rises sharply from the southwest corner of the intersection, two utility poles near the base of the hill, a utility pole further south of the intersection on the west side of Bartold, and a 4′ × 6′ business

sign at the base of the hill. There are no flashing signals but there is a wooden cross-arm sign located at the southeast corner of the intersection. The speed limit on Bartold is 30 miles per hour.

Plaintiff had lived in the vicinity of the railroad crossing for about fifteen months prior to the time of the accident but worked outside the area during the week. He was familiar with the crossing, although he traveled over the crossing only on weekends. He claimed he had never seen a train at the Bartold crossing.

The evening of the accident, plaintiff was proceeding north on Bartold. It was dark outside, and plaintiff's car radio was turned off. When he made the turn from the west to the north on Bartold, he was traveling less than 20 miles per hour. With his foot on the brake, he was reducing his speed as he drove down the hill in the direction of Manchester Road. As he approached the tracks, he did not look to his left. He heard a whistle, at which time he looked to his left and saw the light of the train approximately thirty (30) feet away. Prior to hearing the whistle which alerted him to the train's presence, plaintiff heard no other whistle or bell. Plaintiff stipulated that the train was traveling eight (8) miles per hour as it approached the Bartold crossing from the west.

The only evidence of stopping distance came from questions asked of plaintiff by defendant:

"Q. Within a distance of 50 feet going at the speed you were going when you came down the street that evening, if you had chosen to stop your automobile by applying your brakes could you have stopped at 50 feet?

A. I believe so.

Q. And if you could stop at 50 feet, you could of course stop at 75 feet?

A. Yes sir."

Plaintiff called as witnesses Robert Bower, the train's engineer, Harry Bremer, the switchman, and Carl Morgan, who was riding with the engineer. Morgan testified he could not see "too far" up Bartold because "the hill gets in your way", and that when a train is one hundred feet up the track, he can only see 30–40 feet up Bartold because of the hillside and trees. Bower, the engineer, stated the train was about "35 feet, 40, 50 feet" from the intersection when he first saw plaintiff's car. He could not have seen it sooner because of a big factory and a hill. Bower said he was unaware of a Maplewood City ordinance requiring the bells to be rung 80 rods before a crossing and admitted that the bell was not rung from a point 80 rods back. He testified the bell was rung and the whistle blown about 300 feet from the crossing. Morgan said the horn was blown 100–150 feet from the intersection. A police report, admitted into evidence without objection, indicated all three crew members had stated that as the train neared the crossing, its light was flashing. At trial, however, the engineer denied this statement and testified the light was on but was not flashing.

Plaintiff presented Jay P. Mueller, an engineer and surveyor who had prepared a plat of the area showing various elevations. On cross-examination he testified that when a motorist is 80 feet south of the crossing on Bartold, he can see 180 feet down the track to the west; from a point 50 feet south of the track, a motorist could see 250 feet to the west; and at a point 30 feet south of the tracks, the hill to the west of Bartold would not obstruct a motorist's view of the tracks to the west, though the 4' × 6' business sign would. These distances were based on computations made by the witness on the stand using the plat he had prepared. Photographs of the scene, taken by witness Allen Davis, were admitted in evidence.

Plaintiff submitted on defendant's common law duty to warn and its failure to comply with an ordinance of the City of Maplewood requiring that, "The bell of each locomotive engine shall be rung at the distance of at least eighty rods from the place where the railroad shall cross any street or thoroughfare of this City, and shall run continually until said engine has passed such crossing." Plaintiff made a submissible case on both theories.

Plaintiff argues that he was not contributorily negligent as a matter of law and that the court erred in sustaining defendant's motion for judgment in accordance with its motion for a directed verdict. Defendant contends plaintiff was contributorily negligent as a matter of law because:

Plaintiff's own evidence from himself and his surveyor and his photographer show that when plaintiff was 75 feet from the railroad crossing he was traveling at a speed within which he could stop before reaching the crossing, and at that time the train was clearly within his view, . . . By his own admission, plaintiff did not look for a train; although he was fully aware of the existence and location of the railroad crossing. There was no evidence to the contrary, and plaintiff is bound by that testimony.

In other words, defendant claims the evidence conclusively establishes that if plaintiff had looked he would have seen the train and that at the speed he was traveling he could have stopped in time to have avoided the accident.

■ The rule in Missouri as to whether contributory negligence has been established as a matter of law in cases such as these is that pronounced in *Zumault v. Wabash R. Co.*, 302 S.W.2d 861, 862–63 (Mo. 1957):

The burden of proving plaintiff's contributory negligence was on the defendant. The plaintiff was not obliged to prove as a part of his case that he was in the exercise of due care for his own safety.

    \*    \*    \*    \*    \*    \*

Before the court can declare that contributory negligence is shown as a matter of law, such negligence must clearly appear from admitted or conclusively proved facts. If reasonable men may honestly differ with respect to the inferences to be drawn from such facts, then the question whether the driver exercised the care required for his own safety is for the jury. (Citations omitted). . . . [P]laintiff's evidence must be considered as true and he must be given the benefit of any and all reasonable inferences therefrom

and the aid of any evidence offered by the defendant which is favorable to him. In order for the defendant to maintain its position . . . it must show that the evidence, even when considered most favorably to the plaintiff, unequivocally establishes his contributory negligence.

■ It has been said that a railroad track is a warning of danger. It was plaintiff's duty, when approaching the crossing, to exercise the highest degree of care. He must look at a place where, if possible, he may see the train; he must look at a place where it is reasonably effective to do so, and a motorist approaching a railroad crossing with which he is familiar, who fails to look and see that which is plainly visible if he performs his duty to look is contributorily negligent. *Fugate v. St. Louis-San Francisco Railway Co.*, 348 S.W.2d 718, 723 (Mo.App.1961). In this case, plaintiff had a duty not only to look to the left, but also to the right and ahead.

The law is well established. "The difficulty . . . is in applying the law to the particular facts and circumstances in each case. Distances, speed, physical facts, and conduct of [plaintiff], together with all the other facts and circumstances, must be taken into consideration in passing upon the question of contributory negligence. Each case is more or less different on the facts, and no hard and fast rules may be laid down applicable alike to all cases." *Flannagan v. St. Louis-San Francisco Railway Co.*, 297 S.W. 463, 466 (Mo.App.1927).

■ Plaintiff stipulated the train was traveling eight (8) miles an hour and is bound by this speed. However, as a general rule, a plaintiff is not bound by his estimates of speed or distance. *Baldwin v. Atchison, Topeka & Santa Fe Railway Co.*, 425 S.W.2d 905, 911 (Mo.1968). There was no testimony of plaintiff's exact speed. He stated he was traveling at something less than 20 miles per hour and in answer to a question whether he could have stopped within 50 feet of the tracks, he answered "I believe so." "If you could stop at 50 feet, you could stop at 75?" Answer, "Yes."

Testimony of his speed, stopping distance and the distance of the train when he first saw it were mere estimates. Since the evidence consists of estimates which were not intended to be exact, the plaintiff is not bound thereby; and calculations based thereon cannot convict plaintiff of contributory negligence as a matter of law. *Zumault v. Wabash Railroad Co.*, 302 S.W.2d 861, 864 (Mo.1957).

■ Defendant's contention that plaintiff is bound by the testimony of sight distances of the surveyor must also fail. The witness testified for the purpose of laying a foundation for the admission of a plat prepared by him. It is apparent from the record that he had made no sight distance tests at the scene and that his testimony was based on computations made from the plat while on the witness stand. His estimates pertained only to the obstruction of the hill and did not take into consideration other possible obstructions such as the business sign and the several utility poles. The surveyor did state the business sign might obstruct a motorist's view to the west at a point 30 feet from the tracks. Moreover, the witness had no knowledge of the height of the train or the position of the engine's headlight, factors which are of particular importance in the case of a nighttime collision.

■ Missouri courts have placed great emphasis on photographs in determining visibility in railroad cases. As stated in *Lohmann v. Wabash R. Co.*, 364 Mo. 910, 269 S.W.2d 885, 891 (1954): "What may be seen from a certain place under admitted or undisputed conditions and circumstances, and the view or line of sight under such circumstances is a physical fact, clearly and unequivocally demonstrable by photographic evidence. And where physical facts speak with a force which overcomes testimony to the contrary, reasonable minds must accept and follow the physical facts . . . ."[1]

Plaintiff's photographic exhibits demonstrate that a motorist's visibility from northbound Bartold to the west is extremely limited.[2] Exhibit No. 17, a photograph taken on Bartold Avenue 125 feet south of the railroad tracks, depicts the view of a motorist proceeding north toward the tracks. To the driver's left is the steep hill and two utility poles immediately alongside the traveled part of Bartold. The business sign, facing the tracks, stands at the southwest corner of the intersection of Bartold and the railroad tracks. On the other side of the tracks appear several buildings and utility poles. Plaintiff's Exhibit No. 19 is a photograph taken 75 feet south of the tracks with a view to the west. Visibility is severely restricted by the hill, utility poles, and the business sign. Exhibit No. 20, taken 50 feet south of the rail with a view to the west, shows very little change in visibility with the sign being an even greater factor. Plaintiff's Exhibit No. 24 was taken 75 feet south of the tracks and shows an eastbound train just west of the intersection. The front of the engine is fully visible but much of the engine is obstructed by a utility pole and the business sign. Parts of the first two cars of the train are also visible. Plaintiff's Exhibit No. 25, taken 75 feet south of the tracks, shows the train as it first becomes visible; the engine's headlights are barely visible and nearly obstructed by a utility pole. Only a small portion of the train can be seen. Plaintiff's Exhibit No. 22 was taken 200 feet west of the intersection from a point ten feet above the railroad tracks; it depicts the view of the intersection from the train. A car comes into partial view just south of the intersection on Bartold. This exhibit demonstrates the restricted visibility to the west of a motorist approaching the tracks from the south on Bartold.

■ Plaintiff's testimony indicated that he first heard a warning just prior to the

1. See also *Davenport v. Wabash Railroad Co.*, 435 S.W.2d 641 (Mo. banc 1968); *Willis v. Wabash Railroad Co.*, 377 S.W.2d 489 (Mo. App.1964).

2. All photographic exhibits with a view to the north and west were taken with the camera approximately three feet east of the center line of Bartold at a height of 4′ 9″. Plaintiff's Exhibits 17, 19, and 20 are attached.

accident. The triers of fact were authorized to accept his testimony and reject the testimony of the trainmen that the train's bell and whistle were sounded sooner.[3] There was no evidence plaintiff was driving at an unlawful speed, and we cannot say as a matter of law that it was unreasonable. It is significant the accident occurred at nighttime when visibility would be all the more impaired. The essential consideration, then, is not plaintiff's ability to see the train as such, but his ability to see the train's headlight.

█ We conclude that on all the evidence, the question of what was plainly visible to the plaintiff from a particular point in the street was a question for the jury. The evidence of visibility, the relative positions of the automobile and the train, the speed at which plaintiff was traveling, and his ability to stop, was too inconclusive to warrant a directed verdict. We cannot say, as a matter of law, that if plaintiff had looked to the west sooner than he did, he could have seen the train in time to have taken effective action. His conduct therefore did not constitute contributory negligence as a matter of law. *Fugate v. St. Louis-San Francisco Railway Co., supra.*

There was substantial evidence of plaintiff's contributory negligence but the jury resolved this issue in favor of the plaintiff.

The order of the trial court is reversed and case is remanded with instruction to reinstate the verdict of the jury.

STEWART, P. J., and STEPHAN, J., concur.

Pltf's. Exhibit 17

125 FEET SOUTH OF RAIL

**3.** As stated in *Roques v. Butler County R. Co.,* 264 S.W. 474, 477 (Mo.App.1924):

The traveler can rely upon the statutory signals being given where his view is so obstructed that he cannot by the exercise of due care see an approaching train. If the traveler can hear and listens, and hears no signals and no sound of an approaching train, and cannot by the exercise of due care see an approaching train because of obstructions, then he is not required to leave his vehicle, and go forward on foot to ascertain if a train is approaching, but in such case he may proceed relying upon and depending upon the statutory signals being given.

Pltf's. Exhibit 19

75 FEET SOUTH OF RAIL
3 FEET EAST OF CENTER LINE BARTOLD

Pltf's. Exhibit 20

50 FEET SOUTH OF RAIL
3 FEET EAST OF CENTER LINE BARTOLD