David DOYLE, Husband of Janet E. Doyle, Deceased, and Janet Doyle and Wanda Doyle, minor children of Janet Doyle, Deceased, By and Through David Doyle, their father and next friend, Plaintiffs-Respondents,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, Defendant-Appellant.

No. 37925.

Missouri Court of Appeals, St. Louis District, Division Two.

Aug. 22, 1978.

Motion for Rehearing and/or Transfer Denied Oct. 13, 1978.

Application to Transfer Denied Nov. 6, 1978.

Gerald D. Morris, St. Louis, for defendant-appellant.

Morton K. Lange, Cuba, for plaintiffs-respondents.

STEWART, Presiding Judge.

This appeal arises out of a suit under the provisions of the wrongful death act, 537.-080 et seq. Plaintiffs are the surviving husband and two minor children of Janet E. Doyle (Janet) who died as a result of injuries sustained in a collision between Janet's northbound automobile and a westbound train of defendant, St. Louis-San Francisco Railway Company (Railroad). Plaintiffs sued the Railroad, its engineer Morton, and its two brakemen Mullen and Wilson. The court sustained the motions of defendants Mullen and Wilson for a directed verdict at the close of plaintiffs' case. The jury found in favor of the defendant engineer. A jury verdict and judgment in the amount of $75,000.00 was entered against Railroad.

The primary issue before us is whether plaintiff was guilty of contributory negligence as a matter of law. As required the facts will be stated in the light most favorable to the verdict. *Weber v. Missouri-Kansas-Texas R. R.*, 519 S.W.2d 307, 310 (Mo.App.1975). The fatal accident occurred on May 22, 1974, at about 6:15 a. m. at the Highway P railroad crossing just outside the east edge of Cuba, Missouri. Railroad has two sets of tracks at this crossing that run generally east and west. The southern most set of tracks are the mainline tracks and the northern most are switch or passing tracks. The passing tracks are 9 feet to the north of the mainline, and are 10½ inches lower in elevation. Highway P is about 17 feet wide but narrows to 14 feet at the crossing. Wooden planks are set within each set of tracks at the crossing. Old Highway 66 now ZZ is about 41 feet north of the crossing and parallels the railroad

tracks. There is a gravel road running west from Highway P that parallels the tracks about 11.5 feet south of the southern most track. This road is about 17 feet wide. There are no traffic controls at this "T" intersection.

Highway P originates a little over 1500 to 1600 feet south of the crossing forming a "T" intersection with Highway PP. After moving northwardly from PP, Highway P curves to the right; the curve ends about one-half block south of the crossing. Vegetation along P is very heavy and the crossing cannot be seen until the northbound driver has passed through the curve and reaches the Railroad's right of way.

The right of way extends southward from the mainline a distance of about 50 feet. It is marked by a no trespassing sign. Both parties concede that a northbound driver has no vision to the east until after he has passed the right of way line. There is extremely heavy vegetation to at least that point. There is a crossbuck indicating the presence of the crossing about 16 feet south of the south rail of the mainline track. From plaintiffs' evidence the jury could have found that there were weeds and other growth between the right of way line and the crossbuck which reached a height of 4½ feet. There was testimony that one could see to the east after passing the crossbuck. There was also testimony from which the jury could find that a person going north could not see a train coming until he was within six feet of the track.[1]

Because of the drop in elevation in the crossing and its general nature vehicles crossed at speeds of 3 to 6 miles per hour.

---

1. "Q. [Counsel for plaintiff] Could you see the train coming?

A. [Ruth J. Belcher] No, not until you got closer.

Q. How close would you have to be to the track when you could see it clearly? Could you point out something on these pictures where you would have to be?

A. Here is a gravel road here (indicating), right down in there.

Q. Where would that be in reference to the crossbuck here?

A. It wouldn't be too far from it.

Q. Can you estimate it?

A. From here (indicating).

Q. To the crossbuck—

MR. MORRIS: Let's get this into the record.

Q. (By Mr. Lange) From the counsel table to the clerk's table, is that right?

A. Yes.

Q. Which is about six feet, is that a fair—

A. That is fair.

Q. That's about how close you would have to be to the track?

A. Towards the east, yes.

Q. To get a clear view?

A. Yes."

The vehicle being driven by Janet was a small foreign car. Janet's eye level while seated in the car would be 43 inches above the surface of the road.

The train consisted of four locomotive units and 97 cars. The lead locomotive was 60′ 2″ long, 14′ 7″ in height and 10′ 7″ wide. There was an overhang of 35½ inches. The train had a time table but it was not closely adhered to. In fact, during the month of May it arrived at the Cuba switch anywhere from 4:48 a. m. to 2:00 p. m.

Janet and her sister, Charlotte Pemberton, were employed by a shoe company in Owensville, Mo. They were long time residents of the area and traveled over the crossing every day on their way to and from work. On the morning of the accident Janet and her sister dropped their children at their mother's home on Highway PP near its intersection with Highway P. They then proceeded north on P to pick up Kathy Dotson who also rode to work with Janet. Kathy lived in a subdivision on the north side of the crossing. When Janet was about 700 feet from the crossing she was seen to be driving at a speed of about 15 m. p. h. The witness lost sight of her in the curve just before the crossing. There is no testimony on the part of plaintiffs as to Janet's speed as she approached the crossing or immediately before the accident. As the train approached the crossing it was on a decline of 7 inches per 100 feet from a point about 6,000 feet east of the crossing. As it reached the crossing it was going about 45 to 47 m. p. h. The left front corner of the engine at the grabiron and the right front corner of the car collided. The car was dragged to the west and into a ditch. After the accident Janet's car was facing west with the rear of the car about 30 feet west of Highway P. There were skid marks that commenced about 11½ feet south of the mainline. They continued north for about 4 feet and then turned abruptly to the west and off the west side of the road. The lead engine of the train came to a stop about three-quarters of a mile west of the crossing. The engineer who was seated on the right side of his unit did not see the automobile. He was advised of the accident by his fireman. Both Janet and her sister died as a result of injuries received in the accident.

There was evidence from which the jury could find that neither the train's whistle nor the train's bell was sounded.

Railroad produced evidence to the contrary which only served to create factual issues for the jury. There was evidence on the part of Railroad by its employees and independent witnesses that the train whistle had been sounded. The engineer testified that he gave the normal whistle which was two shorts and a long and two short blasts before the crossing. The fireman testified that they gave two longs, a short and a long. Railroad's fireman who was on the left side of the cab of the engine testified that he saw the car that was driven by Janet when it came from behind the shrubs at the right of way fence about 50 feet from the tracks; that the train was then going 43 to 44 m. p. h. and the nose of the train was about 50 to 60 feet from the crossing; that Janet's car was going about the same speed. He testified that the car did not appear to slow or to swerve. It appeared to him that the impact was at the right front corner of the car and the left front of the engine "where the grabiron was."

Plaintiffs' case was submitted to the jury on the failure to maintain the right of way at the crossing so that it was reasonably clear of vegetation so as not to materially obscure approaching trains from the traveler's view on the highway as provided by law, or that defendant failed to give the statutory warning by bell and whistle. Although Railroad, as discussed hereafter, takes issue with the form of the instruction, it does not contend that plaintiffs did not make a submissible case of primary negligence.

Railroad's primary contention is that the court erred in failing to sustain its motion for directed verdict because plaintiffs' decedent Janet Doyle was contributorily negligent as a matter of law.

■ It is true as Railroad states that plaintiffs' decedent as the operator of a motor vehicle was required to exercise the highest degree of care in the operation of her automobile. She had a duty to look at a place where it was reasonably effective to do so, and a failure to look or to see what is plainly visible if she performs the duty to look would, especially where she is familiar with the tracks, constitute contributory negligence upon her part. *Fugate v. St. Louis-San Francisco Railway Co.,* 348 S.W.2d 718, 723 (Mo.App.1961).

■ There was evidence on behalf of Railroad from which a jury could believe that Janet was contributorily negligent therefore we do not, as plaintiffs urge, indulge a presumption of due care on the part of Janet. However, plaintiffs were not required to prove that Janet was exercising the highest degree of care, rather the burden was upon Railroad to prove its affirmative defense of contributory negligence. *State ex rel. Thompson v. Shain,* 349 Mo. 1075, 163 S.W.2d 967, 973 (banc 1942).

■ Before a plaintiff may be convicted of contributory negligence as a matter of law such negligence "must appear from evidence adduced by [plaintiff] or from evidence which he concedes to be true or from binding documentary evidence, or by proof of facts and circumstances by defendant which leave room for no other reasonable inference, or from a combination of them." *Pipes v. Missouri Pacific Railroad,* 338 S.W.2d 30, 33 (Mo.banc 1960). Contributory negligence as a matter of law is seldom established by defendant's oral testimony. *State ex rel. Thompson v. Shain, supra.* "If reasonable men may honestly differ with respect to the inferences to be drawn from such facts, then the question whether the driver exercised the care required for his own safety is for the jury." *Houston v. Chicago, Rock Island & Pacific Railroad,* 475 S.W.2d 4, 7 (Mo.1972); *Zumault v. Wabash Railroad,* 302 S.W.2d 861, 862–863 (Mo. 1957).

It has often been said, most recently in *Walters v. Terminal Railroad Ass'n,* 569 S.W.2d 228 (Mo.App.St.L.Dist., 1978), that the legal principles with respect to the issue of contributory negligence are well settled; the difficulty is in the application of the law to particular factual situations.

■ In this case, much like *Houston v. Chicago, Rock Island & Pacific Railroad, supra,* there was evidence from which it can be said that there was vegetation which obstructed Janet's view to the east, the direction from which the train came as she approached the crossing. The obstruction continued until at least the crossbuck which was 16 feet south of the track. The distance between the front of Janet's car to where she was seated is not shown in the testimony but as shown by photographs it extended some distance forward of the driver. The distance from the point of vision to the path of the train was further shortened by about three feet of the overhang of the train. One of the witnesses testified that the vision of a northbound motorist was obstructed to about 6 feet from the tracks. There is no conclusive evidence from which we can say that Janet was driving at an excessive rate of speed. The testimony of the fireman that Janet and the train were going at the same rate of speed may not be considered since it does not aid plaintiffs' case. Nor do we consider Railroad's evidence of sight distances introduced into evidence and urged upon us by Railroad for the same reason. *Zumault v. Wabash Railroad, supra,* 302 S.W.2d at 867[3]. Most favorably to plaintiffs, the skid marks beginning 11½ feet south of the mainline considered with the evidence detailed above would indicate that she applied her brakes when the train first became visible to her. The fact that Janet did not stop prior to the point of impact is not conclusive of a lack of due care when we consider all of the evidence favorable to plaintiffs. The plaintiffs' decedent in this case came from around a curve immediately before reaching the crossing. The county blacktop road which was 17 feet wide narrowed to 14 feet as it passed over the crossing. Just 41 feet after crossing the tracks the driver must also cross old highway 66. There is also the gravel road

which intersects highway P from the west forming a "T" intersection. This road is only 11.5 feet south of the tracks. From photographs it appears that the road widens as it intersects P to the point where it is just a few feet from the tracks. There are no traffic controls for traffic entering P from the side road. While the road is not heavily traveled, Janet was required to look for traffic which might enter highway P from that road. She was required to watch for trains coming from the west as well as those from the east. She had to watch for traffic on old highway 66 immediately after crossing the tracks and for any traffic that might be approaching the narrow crossing. Janet could also place some reliance upon the statutory signals being given by the train. *Weber v. Missouri-Kansas-Texas Railroad,* 519 S.W.2d 307, 311 (Mo.App. 1975). Under the facts and circumstances of this case the issue of contributory negligence was for the jury and not the court. *Houston v. Chicago, Rock Island & Pacific Railroad, supra; Zumault v. Wabash Railroad, supra; see also Weber v. Missouri-Kansas-Texas Railroad, supra.*

Railroad next charges that the court erred in giving plaintiff's verdict directing instruction. The instruction reads as follows:

"Your verdict must be for the plaintiffs and against the defendant St. Louis and San Francisco Railway Company if you believe,

First, plaintiffs were the husband and the two minor children, respectively, of Janet E. Doyle, deceased,

Second, defendant St. Louis San Francisco Railway Company either:

Failed to maintain the right of way at the public grade crossing at Highway P so that it was reasonably clear of vegetation and undergrowth for a distance of 250 feet each way from such crossing, where such things did materially obscure approaching trains from the view of travellers on the highway, or

failed to ring a bell at a distance of at least 80 yards from the place where the railroad crossed Highway P, and failed to continue to ring it at intervals thereafter until said engine had crossed the Highway P crossing, and failed to sound a whistle, at a distance of at least 80 rods from the place where said railroad crossing crossed Highway P and failed to continue to sound it at intervals thereafter, until said engine had crossed the Highway P crossing,

Third, as a direct result of such conduct Janet E. Doyle died.

Unless, you believe plaintiff is not entitled to recover by reason of Instruction No. 5."

Railroad argues that paragraph second misdirected the jury and gave them a roving commission and was ambiguous and confusing. It contends first that the instruction is capable of the interpretation that Railroad was required to control vegetation for 250 feet in all directions from the crossing which would include areas beyond its right of way.

This instruction is based upon Public Service Commission General Order No. 47 which provides:

"It shall be the duty of every corporation, company or person owning or operating any railroad or branch thereof in this state to maintain the right-of-way at public grade crossings so that it will be reasonably clear of vegetation, undergrowth or other debris for a distance of 250 feet each way from such crossings, where such things will materially obscure approaching trains from the view of travelers on the highway."

■■■ The issue is one of semantics. Railroad is required to maintain its right of way reasonably clear of vegetation at crossings. This action involved but one crossing. The instruction confined the issue to the right of way at the one crossing; in all other respects it follows the General Order. The General Order has the force and effect of statute. *Anderson v. Kraft,* 129 S.W.2d 85, 89 (Mo.App.1939). An instruction that follows the language of a statute is sufficient. *Cumby v. Farmland Industries, Inc.,* 524 S.W.2d 132, 135 (Mo.App.1975). In this case the instruction can only mean that

Railroad is required to maintain the right of way "so that it" is reasonably clear of vegetation. "It" can only refer to the right of way. We do not find this portion of the instruction to be misleading.

■ Railroad next contends that the instruction required the jury to find that Railroad was required to sound the whistle and to ring the bell. It has long been settled that Railroad must either ring the bell or sound the whistle. It need not do both. *Rollison v. Wabash Railroad,* 252 Mo. 525, 160 S.W. 994, 997 (1913). The instruction here required the jury to find that Railroad did not ring the bell and did not sound the whistle. It is similar to the instructions which were approved in *Gayle v. Thompson,* 167 S.W.2d 954 (Mo.App.1943) and in *Speakman v. Kurn,* 115 S.W.2d 185 (Mo.App.1938). The case cited by Railroad, *Wolfe v. Hines,* 224 S.W. 143 (Mo.App.1920), has often been cited for the same proposition. In that case the court in dicta approved an instruction almost identical with the phraseology of the instruction attacked here. The court there said at page 146, "Under this instruction, the failure to sound the whistle and the failure to ring the bell must have concurred in order to have made defendant liable." The instruction is not vulnerable to the attacks made upon it.

Railroad urges that the giving of MAI 2.02 out of the order required by MAI Notes on Use was prejudicially erroneous. Railroad relies upon *Crystal Tire Co. v. Home Service Oil Co.,* 525 S.W.2d 317 (Mo. banc 1975).

In the case before us there was a total of nine instructions which were given in the sequence in which they were numbered. Instruction No. 7 was MAI 2.02 "Facts Not Assumed." It was given immediately before the measure of damage instruction, MAI 5.05 modified which was numbered 8. MAI 36.01, the "nine of your members" instruction, was numbered 9 and followed the damage instruction. The jury was provided with verdict forms to which there was no objection. No form of the verdict instruction was given. It is probably the intent of MAI that MAI 2.02 be given after the fact finding instructions. In view of the conclusion that we reach it will not be necessary to discuss the order in which this instruction should be given when no form of the verdict instruction is given.

■ Notes on Use under MAI 2.02 provides, "This instruction is to be given in every case immediately before the form of verdict instruction." In *Crystal Tire Co.* the Supreme Court held that the failure to give the instruction in the sequence provided in Notes on Use was error. Rule 70.02(c) provides that, "The giving of an instruction in violation of the provisions of this Rule shall constitute error, its prejudicial effect to be judicially determined." While there should be strict adherence to MAI and while a deviation is presumed prejudicial not every deviation is in fact prejudicial. *State v. Billingsley,* 534 S.W.2d 484, 485 (Mo.App.1975). In *Crystal Tire Co.,* there were 23 instructions with MAI 2.02 given as instruction No. 2. As noted by the court, twenty instructions separated it from the form of verdict instructions. There were two defendants in the case who had filed cross claims in two counts against each other. The court gave five instructions on behalf of plaintiff, eight instructions on behalf of one defendant and six instructions on behalf of the other defendant. The court, in holding that the error in that case was prejudicial, commented that, "The number and nature of the several factual issues in this case illustrate the need for the giving of this instruction at the point required by its Notes on Use." *Id.* at 321, 322.

■ Compared with *Crystal Tire Co.* the issues in this case were simple. Plaintiff had two verdict directing instructions, one against the Railroad alone, the other against the Railroad and its engineer. Railroad and its engineer gave a single contributory negligence instruction. These were the only instructions which require factual findings on the issue of liability. Neither of the parties can claim that they were prejudiced by the sequence in which MAI 2.02 was given so far as the issues of liability are concerned; it affected each of them

equally. As plaintiff points out, there was a verdict in favor of defendant Morton the engineer. The only issue that could have been affected would seem to be the issue of damages and Railroad has abandoned its claim of excessiveness.

Since the opinion in *Crystal,* the issue of the sequence of MAI–CR 2.03 "facts not assumed" has been considered in *State v. Billingsley, supra.* In that case the "facts not assumed" was not placed in the proper sequence as required by Notes on Use.[2] The court found as we do that *Crystal Tire Co.* was distinguishable. *See also State v. Lawrence,* 566 S.W.2d 243 (Mo.App.1978). The trial court in overruling the motion for new trial came to the conclusion that the change in order was not prejudicial. We find it created no likelihood of confusion. It has been demonstrated that under the particular circumstances of this case the error was not prejudicial. *State v. Billingsley, supra.*

Railroad next urges us to reverse and remand because plaintiffs in argument on rebuttal misstated the law when they argued, "If the railroad track is of itself under all circumstances a warning of danger it wouldn't be necessary for this statute."

■ In determining whether the actions of the trial court with respect to argument of counsel were erroneous we consider oft repeated principles. The control of argument is with the discretion of the trial court and will be interfered with only in the event of abuse of discretion. *Naeger v. Naeger,* 339 S.W.2d 492, 497 (Mo.App.1960). A liberal latitude is indulged in argument of counsel especially in response to argument of opposing counsel. *Contestible v. Brookshire,* 355 S.W.2d 36, 44 (Mo.1962). When considering argument of counsel on appeal we must attempt to place the challenged portion of the argument in the context of the entire argument and as the participants were seen and heard by the trial judge and we defer to his better opportunity to judge the effect which it might have upon the jury. *Schmid v. Langenberg,* 526 S.W.2d 940, 946 (Mo.App.1975).

It has been said that it is within the province of the judge to determine how the jury might reasonably construe the language used, for language may reasonably convey more than one meaning. *Naeger.* The trial judge is in a position to discern the inferences conveyed by inflection and gesture.

■ In the case before us counsel for Railroad in his closing argument told the jury,

"The railroad track is and always has been itself a sign of danger, and a motorist in the State of Missouri has to exercise the highest degree of care in approaching a railroad crossing. The law is that a motorist approaching a railroad track has to look when it is effective for her to look."

In the first sentence quoted above Railroad undertook to instruct the jury upon the law in addition to that given to them by the court in its instructions.[3] Instructions upon the law of the case are the prerogative of the court, not of counsel. *Stroh v. Johns,* 264 S.W.2d 304, 307 (Mo.1954).

■ It has repeatedly been said that a railroad track is in itself a sign of danger.

2. "1. This instruction, to be given in every case, shall be read to the jury as the first of the instructions given at the close of the case and immediately prior to argument of counsel. Rule 20.02(a)."

3. *"INSTRUCTION NO. 5*
Your verdict must be for defendants whether or not defendants were negligent if you believe:
First, Janet E. Doyle either:
Upon approaching the crossing, failed to reduce her speed to a rate that would enable her to make an immediate stop before reaching the path of the train, or drove at an excessive speed, or failed to look at the tracks at a place where it was reasonably effective for her to do so; and
Second, Janet E. Doyle's conduct, in any one or more of the respects submitted in paragraph First, was negligent; and
Third, such negligence of Janet E. Doyle directly caused or directly contributed to cause any damage plaintiffs may have sustained.
The term 'negligence' as used in this instruction means the failure to use the highest degree of care which means that degree of care that a very careful and prudent person would use under the same or similar circumstances."

*Pipes v. Missouri Pacific Railroad,* 338 S.W.2d 30, 35 (Mo.banc 1960). The railroad track is a warning that trains move on the track; it is not a warning that there is a train in such close proximity to the crossing that there is likelihood of collision. The argument of counsel could be construed as advising the jury that Janet's knowledge of the presence of the track was the only warning that Janet had a right to expect and that the happening of the accident was conclusive of her failure to use due care in the respects set out in the instruction on contributory negligence. The argument of Railroad ignores the proposition that would permit Janet to place some reliance upon the statutory signals being given by the Railroad. *Weber v. Missouri-Kansas-Texas Railroad,* 519 S.W.2d 307, 311 (Mo.App. 1975).

Plaintiff in retort to the argument of Railroad said,

"That statute [requiring that right of way be reasonably clear of vegetation] and the horn statute are designed to protect travelers going on highways. That is a mandatory rule of conduct which the railroad is bound to observe. Why, if it is the duty of everybody who is driving on that road, on that highway, if the duty is solely on that person this statute wouldn't be necessary. If the railroad track is of itself under all circumstances a warning of danger it wouldn't be necessary for this statute."

This argument is in retaliation of the argument of Railroad set out above. Plaintiffs' argument can be read as saying that Railroad does not discharge its duty to motorist merely by the fact that it has railroad tracks; that the presence of the railroad tracks coupled with a collision does not convict a motorist of contributory negligence. We cannot say that the trial court abused its discretion in overruling Railroad's objection to the argument and in overruling Railroad's motion for new trial on this issue. We do not find reversible error in plaintiffs' argument.

Railroad's final point is that the court erred in permitting Gerald Walker, a witness for plaintiff, to testify with respect to an experience he had at the crossing during May of 1975 about one year after this accident. The witness testified that he had been unable to see the train because of the vegetation; that he did not hear a train whistle or bell and applied his brakes when he felt the vibrations occasioned by the movement of the train. He stopped within about three feet of the train. There was testimony throughout the trial that the conditions at the crossing were substantially the same from the date of the accident through July of 1975. The admission of evidence of this nature is largely within the discretion of the trial court. *Lindsey v. Rogers,* 220 S.W.2d 937 (Mo.App.1949). We believe that this issue is amply answered by *Grothe v. St. Louis-San Francisco Railway Co.,* 460 S.W.2d 711, 718 (Mo.1970). We find no abuse of discretion on the part of the trial court.

Finding no reversible error, the judgment of the trial court is affirmed.

DOWD and REINHARD, JJ., concur.